**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Rustam Iusipov,

           Petitioner,

v.

David R Rivas, et al.,

           Respondentss.

No. CV-26-01125-PHX-RM (ASB)

**ORDER**

Petitioner initiated this action challenging his immigration detention on February 17, 2026. (Doc. 1.) Respondents filed a response on March 4, 2026. (Doc. 6.) For the following reasons, the Court will grant the Petition as to Petitioner's request for a bond redetermination hearing.

## I.    Background

Petitioner is a native and citizen of Russia. (Doc. 1 at 4.) On January 1, 2025, Petitioner entered the United States at the Calexico, California port of entry pursuant to an appointment scheduled through the CBP One app. (*Id.* at 5.) On January 2, 2025, the Government initiated removal proceedings against Petitioner, which remain pending. (*Id.*; Doc. 13.) Petitioner has remained in Immigration and Customs Enforcement ("ICE") custody since arriving in the United States on January 1, 2025. (Doc. 1 at 5.)

## II.    The Petition

In his Petition, Petitioner asserts that his present immigration detention is prolonged and violates his due process rights. (Doc. 1.) He challenges his detention under *Zadvydas*

*v. Davis*, 533 U.S. 678 (2001). (*Id.*) He further requests that he be granted a bond hearing if he is not granted release from ICE custody. (*Id.* at 6.)

In Response, Respondents argue that *Zadvydas* is inapplicable because Petitioner does not have a final order of removal, that Petitioner is properly subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), and that as an alien subject to the "entry fiction," Petitioner has no substantive due process right to freedom from confinement. (Doc. 6 at 2-6.)

### III. Discussion

#### a. Applicability of *Zadvydas*

After the entry of a final removal order, there is a 90-day period during which the alien ordered removed must be detained. 8 U.S.C. § 1231(a)(2)(A). If removal does not occur during the 90-day period, further detention is statutorily authorized. 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Court held that detention beyond the 90-day removal period is presumptively reasonable for 6 months; if an alien shows after the conclusion of the 6-month period that there is no significant likelihood of his removal in the reasonably foreseeable future, however, he should be released. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). The Court's holding in *Zadvydas* is confined to § 1231(a)(6). *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018).

Here, *Zadvydas* is inapplicable to Petitioner because he lacks a final order of removal and therefore is not detained pursuant to § 1231(a)(6). (*See* Docs. 1, 13.) Petitioner's *Zadvydas* claim will accordingly be denied.

#### b. Detention Pursuant to 8 U.S.C. § 1225(b)

"[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" 8 U.S.C. § 1225(b)(2)(A). "An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a). An alien falling within the scope of § 1225(b) must be detained until the conclusion of the alien's

removal proceedings; the statute contains no limit upon the length of detention nor any bond hearing requirement. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

Here, Petitioner is an applicant for admission, and is seeking admission, because he has never been afforded lawful status in the United States and presented himself at a port of entry with the goal of obtaining lawful entry into the United States. (*See* Doc. 1 at 5-6.) When Petitioner presented himself at the Calexico port of entry on January 1, 2025, the examining immigration officer determined that Petitioner is not clearly and beyond a doubt entitled to be admitted to the United States, as evidenced by the commencement of removal proceedings against Petitioner the following day. (*Id.*) Therefore, Petitioner falls within the scope of § 1225(b)(2)(A).[1] Accordingly, the Petition will be denied to the extent Petitioner asserts he is not subject to mandatory detention under § 1225(b)(2)(A).

### c. Due Process

The Court turns to Petitioner's due process claim. The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### 1. Liberty Interest

"A liberty interest may arise from the Constitution itself[2] . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). If a liberty interest is found, the Court then determines

---

[1] The Court notes that in their discussion regarding the applicability of § 1225(b)(2)(A), Respondents appear to misstate the facts of this case, stating that "[i]n January 2025 Petitioner presented herself at a port of entry and was released into the United States." (Doc. 6 at 4.) Elsewhere in the Response—consistent with the Petition—Respondents state that Petitioner has remained detained since presenting himself at the Calexico port of entry on January 1, 2025, and has never been released into the United States. (Doc. 6 at 1, Doc. 1 at 5.) Respondents are cautioned to carefully review every submission to the Court.

[2] "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

whether the administrative procedures are sufficient considering the "particular situation."[3] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In the instant action, the parties disagree whether Petitioner possesses a cognizable liberty interest. Respondents urge that Petitioner has no liberty interest in remaining outside of immigration custody.  Respondents further present an entry fiction argument alleging that Petitioner's sole liberty interest is in the procedures contained within the INA, which does not include a bond hearing for noncitizens held pursuant to § 1225(b)(2).

The only Ninth Circuit decision upon which Respondents rely is *Wong v. Immigration and Naturalization Service.*, 373 F.3d 952 (9th Cir. 2004). (Doc. 6 at 6.) In *Wong*, the Ninth Circuit Court of Appeals addressed whether a noncitizen has a liberty interest in temporary parole. *See Wong*, 373 F.3d at 967. The court found that "[t]he INA does not create any liberty interest *in temporary parole* that is protected by the Fifth Amendment." *Id.* at 968 (emphasis added). "Rather, the statute makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.*

The Court finds Respondents' reliance on *Wong* misplaced. The Court declines to conflate temporary parole with a request for a bond hearing before a neutral decisionmaker. As to his due process claim, Petitioner does not assert a liberty interest in temporary parole. Rather, Petitioner asserts a constitutional liberty interest in release from DHS custody or, alternatively, a bond hearing. Hence, *Wong* is inapplicable.

Additionally, the Court does not find that the entry fiction doctrine forecloses Petitioner's due process claim as to his present detention. The entry fiction doctrine is based upon the "distinction between those aliens who have come to our shores seeking admission, such as Petitioner, and those who are within the United States after an entry, irrespective

---

[3] The Court notes that due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

- 4 -

of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens have "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country[.]" *Thuraissigiam*, 591 U.S. at 139. Therefore, while a citizen may physically be present within the country, they may "still in theory of law" be "at the boundary line," having "gained no foothold in the United States[.]" *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 257–58 (1925)).

Numerous courts in this district and its sister districts have found that the entry fiction doctrine is of limited application. Those courts have found that the entry fiction doctrine solely applies to the procedural rights of noncitizens regarding *admission*, not *every* procedure occurring in the immigration context—*i.e.*, the entry fiction doctrine is inapplicable to challenges regarding a petitioner's length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at \*28–31 (D. Mass. Feb. 25, 2026)[4]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable).

[4] Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, the undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. See Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at \*3–4 (D. Ariz. Mar. 9, 2026).

For example, the district court in *D.V.D.* noted that in cases that provide an exception to the otherwise "geographic" scope of the Due Process Clause, "the due process rights impacted are only those 'regarding admission.'" *Id.* at *30 (quoting *Thuraissigiam*, 591 U.S. at 140). "This distinction arises near the very inception of the entry-fiction case law." *Id.* In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's 'exclusive authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor." *Id.* (quoting *Wong Wing*, 163 U.S. at 232–33, 235–38). The district court noted that although Wong Wing "presented the particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238). The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Thuraissigiam*, 591 U.S. at 140).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'" *Id.* (citation omitted). "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas*, 533 U.S. at 699). "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's admissibility." *Id.* (emphasis in original). Accordingly,

where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[ ] to," the issue of [his] admissibility." *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives him of his liberty interests. *Id.*

In short, neither bond hearings nor release equates admissions. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does not purport to invoke any 'rights regarding admission.'" *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause.").

## 2. Due Process Rights Regarding Petitioner's Prolonged Detention

In determining Petitioner possesses a liberty interest in freedom from detention, the Court must decide what process is due.  Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Out of the abovementioned tests, the Court finds the *Banda* test the most appropriate

to the situation in this matter. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews*[5] and *Lopez*[6] tests. Beginning with *Mathews,* the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07.[7]

---

[5] Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

[6] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

[7] In any event, the outcome applying *Mathews* and *Banda* would be the same—*i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element, the undersigned finds that Petitioner has a strong private interest in his liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Turning next to the *Lopez* test, the Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and] are, in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for noncitizens held pursuant to § 1225(b), the Court accordingly elects to apply it.

### i.   Length of Detention.

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Petitioner has been held in DHS custody for approximately 15 months. Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold the "detention[] become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist.

---

Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioner's 20-month detention, undersigned concludes that due process requires he be provided with an individualized bond hearing.

- 9 -

LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026)). Petitioner has been detained for approximately 15 months. This is well beyond the six-month threshold, and well beyond the length of confinement other courts have found to be prolonged. *See, e.g.*, *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."). In light of these decisions, and based upon the facts of the instant action, the Court finds the length of Petitioner's detention strongly favors granting relief.

### ii.    Likely Duration of Future Detention

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain considering Petitioner's pending appeal before the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner. *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA.").

### iii.    Conditions of Detention

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Neither party has addressed Petitioner's condition of confinement. Hence, this factor is neutral.

### iv.   Delays in Removal Proceedings

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).  Respondents do not contend Plaintiff has caused any delays in this action.  Consequently, this factor is neutral.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–11 (S.D.N.Y. May 23, 2018)).  It is unclear to what extent the delay is caused by the BIA's delay in resolving Petitioner's appeal.  Therefore, the fifth factor is also neutral.

### v.   Likelihood of Removal

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11). Based on the current record, Petitioner has not established he is likely to prevail in his appeal before the BIA.  Therefore, the sixth factor favors Respondents.

### vi.   Conclusion

Two factors favor Petitioner, including one that strongly favors him; three factors

are neutral; and one factor favors Respondents.  Based on these factors, the Court concludes that Petitioner's continued detention under § 1225(b)(2) has become unreasonable. Therefore, Petitioner is entitled to relief.

### 3.  Remedy.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral immigration judge. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing). At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

Accordingly,

**IT IS ORDERED** that the Petition (Doc. 1) is **granted** as to Petitioner's request for a bond hearing, and **denied** as to Petitioner's request for immediate release.

**IT IS FURTHER ORDERED** that Petitioner shall receive a bond hearing within **seven (7) days** of the date this Order is filed. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that Respondents shall file a notice of compliance within **two (2) days** of Petitioner's bond hearing or release.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order (Doc. 9) is **denied as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in Petitioner's favor and close this case.

Dated this 14th day of May, 2026.


_____
Honorable Rosemary Márquez
United States District Judge